UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NIPUN KAKKAR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BELLICUM PHARMACEUTICALS, INC., RICHARD A. FAIR, and ALAN A. MUSSO,<br><br>Defendants. | Case No.  4:18-cv-00338<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Nipun Kakkar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bellicum Pharmaceuticals, Inc. ("Bellicum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Bellicum's securities between May 8, 2017 and January 30, 2018, both dates inclusive (the "Class Period"), seeking to recover damages

1

caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Bellicum operates as a clinical stage biopharmaceutical company. The Company focuses on discovering and developing novel cellular immunotherapies for various forms of cancer.

3. Founded in 2004, Bellicum is headquartered in Houston, Texas and its securities trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "BLCM."

4. The Company's lead clinical product candidate, BPX-501, is an adjunct T-cell therapy administered after allogeneic hematopoietic stem cell transplantation ("HSCT"). Bellicum has represented that BPX-501 is currently being evaluated in multiple Phase 1/2 clinical trials.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a substantial undisclosed risk of encephalopathy was associated with the Company's lead product candidate BPX-501; and (ii) as a result of the foregoing, Bellicum's public statements were materially false and misleading at all relevant times.

6. On January 30, 2018, post-market, Bellicum issued a press release entitled "Bellicum Pharmaceuticals Announces Clinical Hold on BPX-501 Clinical Trials in the United States," announcing that it had "received notice from the U.S. Food and Drug Administration (FDA) that U.S. studies of BPX-501 have been placed on a clinical hold following three cases of encephalopathy deemed as possibly related to BPX-501."

7. On this news, Bellicum's share price fell $2.12, or 25.85%, to close at $6.08 on January 31, 2018.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Bellicum's principal executive offices are located within this District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.  Plaintiff, as set forth in the attached Certification, acquired Bellicum securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.  Defendant Bellicum is headquartered in Texas, with its principal executive offices located at 2130 West Holcombre Boulevard, Suite 800, Houston, Texas 77030.  Bellicum's shares trade on the NASDAQ under the ticker symbol "BLCM."

15.  Defendant Richard A. Fair ("Fair") has served as the Company's Chief Executive Officer ("CEO"), President and Director since January 2017.

16.  Defendant Alan A. Musso ("Musso") has served as the Company's Chief Financial Officer ("CFO") and Treasurer since November 2014.

17.  The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein as the "Individual Defendants."

18.  The Individual Defendants possessed the power and authority to control the contents of Bellicum's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.　Bellicum operates as a clinical stage biopharmaceutical company. The Company focuses on discovering and developing novel cellular immunotherapies for various forms of cancer. Bellicum Pharmaceuticals operates in the United States.

20.　The Company's lead product candidate is an adjunct T-cell therapy administered after allogeneic HSCT. Bellicum has represented that BPX-501 is currently being evaluated in multiple Phase 1/2 clinical trials.

### Materially False and Misleading Statements Issued During the Class Period

21.　The Class Period begins on May 8, 2017, when Bellicum issued a press release and filed a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 8-K"). For the quarter, Bellicum reported a net loss of $21.97 million, or $0.80 per diluted share, on revenue of $130,000, compared to a net loss of $15.08 million, or $0.56 per diluted share, on revenue of $90,000 for the same period in the prior year.

22.　In the Q1 2017 8-K, Bellicum stated, in part:

> "We had a productive first quarter across our pipeline," said Rick Fair, Bellicum's President & Chief Executive Officer. "We continued to make progress on the registration trial for BPX-501, and presented updated clinical data highlighting its potential to transform patients' lives. We are actively recruiting initial clinical trials with our controllable CAR T and TCR product candidates, and presented preclinical data on exciting new enhancements to our pioneering technology platform. This progress underscores our commitment to developing novel cell therapies in areas of dire need."

**PROGRAM HIGHLIGHTS AND CURRENT UPDATES**

<u>BPX-501</u>

Adjunct T-cell therapy, administered after allogeneic hematopoietic stem cell transplantation, to support faster immune recovery, improved infection control, and reduced mortality and Graft versus Host Disease (GvHD)

- **Registration Studies Advancing in the European Union**
  Bellicum continues to enroll its registration trial in the E.U. with BPX-501 and rimiducid in pediatric patients with orphan inherited blood disorders or hematologic cancers receiving a haploidentical transplant, and is preparing to initiate a separate observational trial in a comparative sample of patients receiving a matched unrelated donor, or MUD, transplant to support regulatory submission.

- **Preparation Ongoing for U.S. Registration Trials**
  Bellicum continues to prepare for pivotal trials of BPX-501 in the U.S. in pediatric patients with orphan inherited blood disorders and blood cancers and in adults with high- and intermediate-risk AML receiving haploidentical transplant.

- **Data Update Highlights Promise of BPX-501 Clinical Program**
  At the Bone Marrow Transplant (BMT) Tandem Meeting in February, Bellicum reported data from the BP-004 trial which showed a low incidence of transplant-related mortality, rapid immune recovery, a low rate of GvHD that was manageable with standard treatments or rimiducid, and no serious adverse events associated with the use of BPX-501 or rimiducid.

23. On May 8, 2017, Bellicum also filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results reported in the Q1 2017 8-K (the "Q1 2017 10-Q"). The Q1 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. On August 8, 2017, Bellicum issued a press release and filed a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 8-K"). For the quarter, Bellicum reported a net loss of $24.46

million, or $0.74 per diluted share, on revenue of $0, compared to a net loss of $16.51 million, or $0.61 per diluted share, on revenue of $100,000 for the same period in the prior year.

25.     In the Q2 2017 8-K, Bellicum stated, in part:

"Since I joined the Company six months ago, we have conducted a thorough review of our strategy and operations, and are very optimistic about the opportunities before us," said Rick Fair, Bellicum's President & Chief Executive Officer. "We continue to be encouraged by the results from our ongoing BPX-501 pediatric studies and our progress toward a filing in Europe. We have adjusted our plans for U.S. registrational trials to enable an efficient path to seeking approvals for the greatest areas of unmet need. Lastly, we continue to be excited about the clinical progress of our CAR T and TCR product candidates, and the application of our molecular switch platform for future pipeline expansion."

**PROGRAM HIGHLIGHTS AND CURRENT UPDATES**

**BPX-501**
Adjunct T-cell therapy incorporating the CaspaCIDe® safety switch, administered after a haploidentical hematopoietic stem cell transplant (haplo-HSCT), to improve outcomes and reduce mortality

- **Data Update Suggests BPX-501 Improves Outcomes of Haploidentical Stem Cell Transplants**
  During the Presidential Symposium of the 22nd Congress of the European Hematology Association (EHA) in June, Bellicum reported data from 98 pediatric patients within the BP-004 trial which showed rapid immune recovery, a low incidence of transplant-related mortality, a reduction in viral infections and a low rate of Graft versus Host Disease (GvHD) that was manageable with either standard treatments or rimiducid. The data suggest BPX-501 could improve outcomes of haploidentical stem cell transplants, providing an option for the many patients who could benefit from a life-saving transplant but lack a matched donor.

- **Positive Clinical Results of BPX-501 in Pediatric Leukemias**
  Also at EHA, Bellicum reported data from the BP-004 trial in a cohort of 47 pediatric patients with acute leukemias who lack a matched donor. The data showed rapid immune reconstitution and low rates of relapse and mortality, suggesting that BPX-501 may offer benefits in combination with HSCT in acute leukemia patients.

- **European BP-004 Pivotal Clinical Trial Progressing**
  Enrollment in the pivotal EU BP-004 trial remains on track for completion by the end of 2017. Bellicum expects to initiate an observational trial in pediatric patients receiving transplants from matched unrelated donors (MUD) without

7

>BPX-501 in the third quarter. Outcomes from these trials are expected to be the basis for filings of European Marketing Authorization Applications for BPX-501 and rimiducid. The Company expects to report top-line results of these studies in the second half of 2018, with MAA filings planned for 2019.
>
>- **Company Clarifies U.S. Clinical Development Strategy**
>Bellicum is finalizing plans for the design of registrational trials of BPX-501 in the U.S. The Company's current plans include conducting a controlled clinical trial in adult patients with acute myeloid leukemia (AML), which it expects to fund in part through its $16.9 million Product Development Award from the Cancer Prevention and Research Institute of Texas ("CPRIT"). In the pediatric non-malignant setting, Bellicum is designing a registrational trial to evaluate BPX-501 in a distinct subset of orphan inherited blood disorders.

26. On August 8, 2017, Bellicum also filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results reported in the Q2 2017 8-K (the "Q2 2017 10-Q"). The Q2 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. On November 7, 2017, Bellicum issued a press release and filed a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 8-K"). For the quarter, Bellicum reported a net loss of $23.43 million, or $0.71 per diluted share, on revenue of $130,000, compared to a net loss of $17.72 million, or $0.66 per diluted share, on revenue of $110,000 for the same period in the prior year.

28. In the Q3 2017 8-K, Bellicum stated, in part:

>"We made good progress advancing our pipeline in the third quarter. Enrollment in our clinical program for BPX-501 remains on track and we progressed our plans for future trials in adult AML and a pediatric orphan blood disorder," said Rick Fair, Bellicum's President & Chief Executive Officer. "On BPX-601, we modified our Phase 1 trial to accelerate evaluation of our first clinical GoCAR-T candidate, and we look forward to reporting preliminary results next year. Finally, we continued to advance several exciting preclinical programs, leveraging our dual-switch controllable cell therapy platform."

**PROGRAM HIGHLIGHTS AND CURRENT UPDATES**

**BPX-501**
Adjunct T-cell therapy incorporating the CaspaCIDe® safety switch, administered after a haploidentical hematopoietic stem cell transplant (haplo-HSCT), to improve outcomes and reduce mortality

- **Bellicum Continues to Advance its BPX-501 Program**
  Enrollment in the EU BP-004 clinical trial remains on track to be complete by the end of 2017. Bellicum has also initiated C-004, an observational trial in pediatric patients receiving transplants from matched unrelated donors (MUD) without BPX-501. The outcomes of both trials could form the basis for filings of European Marketing Authorization Applications for BPX-501 and rimiducid. A BPX-501 abstract, highlighting data on immune reconstitution from the EU BP-004 clinical trial, has been accepted for an oral presentation at the upcoming 59th Annual Meeting of the American Society of Hematology (ASH) in December.

- **Company Prepares for Additional BPX-501 Trials in U.S.**
  Planning is ongoing for two additional trials of BPX-501 to expand the eligible patient population and support potential U.S. registration. These trials are being developed in adult patients with acute myeloid leukemia (AML) and in a distinct orphan inherited blood disorder patient population.

29. On November 7, 2017, Bellicum also filed a quarterly report on Form 10-Q with the SEC, reiterating the financial and operating results reported in the Q3 2017 8-K (the "Q3 2017 10-Q"). The Q3 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30. The statements referenced in ¶¶ 21-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a substantial undisclosed risk of encephalopathy was associated with the Company's lead product candidate BPX-501; and

9

(ii) as a result of the foregoing, Bellicum's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

31. On January 30, 2018, *post-market*, Bellicum issued a press release entitled "Bellicum Pharmaceuticals Announces Clinical Hold on BPX-501 Clinical Trials in the United States," announcing that it had "received notice from the U.S. Food and Drug Administration (FDA) that U.S. studies of BPX-501 have been placed on a clinical hold following three cases of encephalopathy deemed as possibly related to BPX-501."

32. On this news, Bellicum's share price fell $2.12. or 25.85%, to close at $6.08 on January 31, 2018.

33. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Bellicum securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bellicum securities were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bellicum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Bellicum;

- whether the Individual Defendants caused Bellicum to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Bellicum securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Bellicum securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Bellicum securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Bellicum securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Bellicum securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for Bellicum securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Bellicum's finances and business prospects.

47. By virtue of their positions at Bellicum , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Bellicum, the Individual Defendants had knowledge of the details of Bellicum's internal affairs.

49. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Bellicum. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Bellicum's businesses, operations, future financial condition and future prospects. As a result of the

dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Bellicum securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Bellicum's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Bellicum securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50. During the Class Period, Bellicum securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Bellicum securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Bellicum securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Bellicum securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, the Individual Defendants participated in the operation and management of Bellicum, and conducted and participated, directly and indirectly, in the conduct of Bellicum's business affairs. Because of their senior positions, they knew the adverse non-public information about Bellicum's misstatement of income and expenses and false financial statements.

55. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Bellicum's financial condition and results of operations, and to correct promptly any public statements issued by Bellicum which had become materially false or misleading.

56. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Bellicum disseminated in the marketplace during the Class Period concerning Bellicum's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Bellicum to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Bellicum within the

meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bellicum securities.

57. Each of the Individual Defendants, therefore, acted as a controlling person of Bellicum. By reason of their senior management positions and/or being directors of Bellicum, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Bellicum to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Bellicum and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Bellicum.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 6, 2018

Respectfully submitted,


/s/ Willie C. Briscoe
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
The Briscoe Law Firm, PLLC
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
214-643-6011
281-254-7789 (Facsimile)
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*