United States District Court
Southern District of Texas

**ENTERED**
May 29, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NIPUN KAKKAR, Individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:18-CV-338 |
| BELLICUM PHARMACEUTICALS, INC., *et al*, | § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are Defendants' Motion to Dismiss (the "Motion") (Doc. #55), Plaintiff's Response (Doc. #58), and Defendants' Reply (Doc. #60). Having reviewed the parties' arguments and applicable law, the Court grants the Motion.

### I.   Background

Plaintiff Nipun Kakkar brings this federal securities class action on behalf of purchasers and acquirers of securities of Bellicum Pharmaceuticals, Inc. ("Bellicum") during the putative Class Period of January 13, 2015 to January 30, 2018. Doc. #49 ¶ 1. Bellicum is a "clinical stage pharmaceutical company" that conducted clinical trials on the drug formerly known as BPX-501, "an adjunct T-cell therapy administrative after allogenic hematopoietic stem cell transplantation" ("HSCT").[1]  *Id. ¶¶* 2, 3, 25, 26. A "Phase 1/2 clinical trial" for BPX-501 commenced in 2014 in both European and U.S. pediatric centers involving "children with leukemia, lymphoma, or orphan inherited blood disorders." *Id.* ¶ 28.

On January 30, 2018, Bellicum announced that the Food and Drug Administration ("FDA")

---

[1] Though BPX-501 is presently known as "rivogenlecleucel" or "Rivo-cel," the Court uses BPX-501, the name used by Bellicum during the Class Period, throughout this Order. *Id. ¶* 3.

had placed a clinical hold on BPX-501 "following three cases of encephalopathy deemed as possibly related to BPX-501," one of which resulted in death. *Id.* ¶¶ 7–8, 30. The next day, Bellicum's stock price closed at $6.08, a decrease of $2.12 or 25.85 percent. *Id.* ¶ 9. During the duration of the hold, Bellicum did not conduct any clinical trials on BPX-501. *Id.* ¶ 124. On April 11, 2018, Bellicum issued a press release declaring that the FDA had lifted the hold "following amendments made to the BPX-501 study protocols to address the monitoring and management of neurotoxicity related adverse events, and to ensure investigators followed proper procedures for doing so." *Id.* ¶ 126.

Plaintiff initiated this case on February 6, 2018, before Bellicum issued the above press release, alleging violations of Section 10(b) and Rule 10b–5 and Section 20(a) against Bellicum and its former Chief Executive Officer ("CEO") Thomas J. Farrell, current CEO Richard A. Fair, current Chief Financial Officer Alan A. Musso, and former Chief Operating Officer ("COO") Annemarie Moseley (collectively, "Defendants"). Doc. #1 and Doc. #49. In the Complaint, Plaintiff asserts that Defendants made false and misleading statements and/or failed to disclose (1) "a substantial risk of encephalopathy" associated with BPX-501 and that the three cases of encephalopathy had occured; (ii) deficiencies in Bellicum's "clinical trial procedures and protocols" regarding such "neurological adverse events"; and (iii) that "FDA approval was less likely and/or clinical trial delay was more likely than represented." *Id.* ¶ 49. Defendants moved to dismiss the Complaint on July 5, 2019, arguing that Plaintiff had not alleged "with particularity what specific facts **any** individual Defendant possessed at the time of **any** specific alleged misstatement to support a strong inference that such statement was fraudulent." Doc. #55 (emphasis in original). Plaintiffs filed the Response on August 26, 2019. Doc. #58.

2

## II.      Legal Standards

### a.      Motion to Dismiss

"A plaintiff's complaint will survive a Rule 12(b)(6) motion to dismiss if, accepting its factual allegations as true, the complaint plausibly states a claim for relief.  Where [] the complaint involves an allegation of fraud, Federal Rule of Civil Procedure 9(b) imposes a higher standard on the complainant, requiring that he plead with particularity the circumstances constituting fraud. The [Private Securities Litigation Reform Act] has raised the pleading bar even higher and enhances Rule 9(b)'s particularity requirement for pleading fraud in two ways.  First the plaintiff must specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading.  Second, for each act or omission alleged to be false or misleading, plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind."  *Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017) (quoting *Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016)) (cleaned up).

To state a securities fraud claim under Section 10(b) and Rule 10b–5, "a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury."  *Neiman*, 854 F.3d at 746 (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 406–07 (5th Cir. 2001)) (cleaned up).

### b.      Motion to Amend

Courts "generally will not construe unelaborated, nested requests for amendment as motions to amend. '[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a

motion within the contemplation of Rule 15(a).'" *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir.2003)).

### III.   Analysis

#### a.   Section 10(b) and Rule 10b-5

Defendants argue that Plaintiff has failed to plead particularized allegations supporting  a strong inference of scienter to sufficiently state a claim under Section 10(b) and Rule 10b–5.  Doc. #55 at 19.  The Fifth Circuit has defined "scienter" as "an intent to deceive, manipulate, or defraud or severe recklessness."  *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 684 (5th Cir. 2014) (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir.2009)).  "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . ."  *Id.* (alteration omitted) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir.2003), and *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)).  In reviewing allegations of scienter, the court must (1) take the factual allegations as true; (2) evaluate the facts "collectively, not in isolation, to determine whether a strong inference of scienter has been pled"; and (3) "take into account plausible inferences opposing as well as supporting a strong inference of scienter."  *Shaw Grp.*, 537 F.3d at 533 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)).  Ultimately, "the inference of scienter must [] be cogent and compelling, not merely reasonable or permissible."  *Id.* (quoting *Tellabs*, 551 U.S. at 324).

Here, Plaintiff asserts that the facts in the Complaint, viewed "holistically, give rise to a strong and compelling inference" of Defendant's knowledge or recklessness.  Doc. #58 at 22.  In

4

support, Plaintiff points to the following allegations:

- "Bellicum had a safety database for the clinical trials.  Adverse events were entered into the database within 24 hours of occurrence.  Bellicum is required to notify the FDA of adverse events within 15 days."  Doc. #49 ¶ 31.
- A confidential witness "noticed that Bellicum massively slowed down production of BPX-50 in mid-2017 and, after inquiring, was told that the encephalopathy death likely influenced the slowdown." *Id. ¶ 38.*
- "[I]n mid-2017, Defendant Moseley resigned as COO and Executive Vice President of Clinical Development after having a leading role in clinical development . . . ." *Id. ¶ 34.*
- "In 2017, after the adverse encephalopathy events had occurred, Bellicum hired Dr. Paul Woodard ("Woodard") as the VP of clinical development responsible for managing the clinical trials," and Woodhard had previously "co-authored a scientific paper discussing HSCT, the procedure for which BPX-501 is designed, wherein he describes the encephalopathy risks associated with HSCT and the grave danger to the patient when it occurs." *Id. ¶ 33.*
- "Defendants Farrell and Musso spoke with authority regarding [Bellicum's] compliance with the FDA's requirements regarding 'Good Clinical Practices.'"  Doc. #58 at 23.  *See e.g.*, *Id. ¶ 48* (2014 Form 10-K signed by Farell and Musso stated that "clinical trials are conducted in accordance with GCP"); *Id. ¶ 52* (Musso stated in 2015 earnings call that "BPX-501 could make a therapy known to be . . . safer"); *Id. ¶ 60* (Farrell stated in 2016 press release that "treatment with BPX-501 appears safe"); *Id. ¶¶ 107, 112* (slide presented by Bellicum at 2017 conference presented "risks and benefits of 'T-Cells in Allogeneic HSCT,' which is what BPX-501 does, and lists only 'Graft vs Host Disease (GvHD),' while leaving out neurotoxicity/encephalopathy").

Plaintiff also alleges that "Defendants put themselves forth as knowledgeable on issues of safety and clinical procedure" and that "the Individuals Defendants [each] spoke throughout the Class Period regarding BPX-501's safety."  Doc. #58 at 23.

Even viewed holistically, these allegations fail to establish scienter for two main reasons. First, Plaintiff cannot support an inference of scienter by relying on Defendants' "collective knowledge" of safety and clinical procedure issues or of the safety of BPX-501.  *See Shaw Grp.*, 537 F.3d at 533 (explaining that the Fifth Circuit has "rejected the group pleading approach to

scienter and instead looks to the state of mind of the individual corporate official or officials who make or issue the statement" and not to the "collective knowledge" of a corporation's officers and employees) (quotation marks omitted) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir.2004)). Rather, Plaintiff must identify specific facts demonstrating scienter for each alleged misstatement made by each individual Defendant and not just describe what Defendants generally did or knew. *See In re Plains All Am. Pipeline, LP Sec. Litig.*, 245 F. Supp. 3d 870, 923 (S.D. Tex. 2017), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am.* Pipeline, LP, 777 F. App'x 726 (5th Cir. 2019) (finding that, by alleging "the same set of claims about what 'the defendants' did or knew," plaintiffs failed to meet their burden of identifying "specific facts showing scienter" for each false or misleading statement identified). In this case, Plaintiff alleges facts regarding the safety database, a confidential witness, Defendant Moseley's resignation and subsequent replacement by Woodard, and Defendants' general knowledge of Bellicum's clinical procedures and BPX-501. But none of these facts are specific to any individual Defendant or any alleged misstatement. Therefore, Plaintiff's allegations fall short of Rule 9(b)'s particularity requirement. *See Neiman*, 854 F.3d at 746 ("[F]or each act or omission alleged to be false or misleading, plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind.").

Second, Plaintiff erroneously conflates "knowledge" with "an intent to deceive, manipulate, or defraud or severe recklessness." *Spitzberg*, 758 F.3d at 684. Plaintiff cites statements made by Defendants Farrell and Musso and by other individual Defendants as ostensibly evincing knowledge of "issues of safety and clinical procedure," including "Good Clinical Practices." Doc. #58 at 23. But none of these statements indicates that Defendants knew about the three cases of encephalopathy at issue—let alone that they were "severely reckless" in

6

failing to disclose such "adverse events." *See In re Plains* at 923 ("[T]the fact that an individual defendant made a statement or signed a document containing a statement shows only that the statement is attributable to that defendant, not that he or she had the legally required state of mind."). At any rate, "[k]nowledge of an omission does not itself necessarily raise a strong inference of scienter." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005). Because Plaintiff has alleged no "clear motive" for Defendants' alleged misstatements, "the strength of [the] circumstantial evidence of scienter must be correspondingly greater." *Id.* So, even assuming that Defendants made the statements identified with knowledge of the risks associated with BPX-501 or of "deficiencies in the procedures and protocols" for clinical trials (Doc. #58 at 22), Plaintiff still must offer sufficient circumstantial evidence of scienter. But neither the existence of the safety database, the confidential witness's claims, Defendant Moseley's resignation, nor hiring Woodard justifies a "strong inference of scienter" as to any individual Defendant.[2] Therefore, the statements identified by Plaintiff fail to rise to the level of "highly unreasonable omissions or misrepresentations" involving "an extreme departure from the standards of ordinary care." *Spitzberg*, 758 F.3d at 684.

Likewise, Plaintiff attempts to adequately plead scienter by characterizing Bellicum as a "one trick pony." Doc. #58 at 23. Specifically, Plaintiff alleges that Defendants Farrell, Fair, Musso, and Moseley "stood at the helm of Bellicum," and must have known about "serious issues

---

[2] Indeed, Plaintiff has failed to tie any of the purported allegations of scienter to any specific misstatement, which weighs against a strong inference of scienter as to any individual Defendant. *See In re Plains*, 245 F. Supp. 3d at 932 (noting that, because "there [was] no basis to tie any one of [plaintiffs'] lengthy list of alleged misstatements to the facts showing scienter," plaintiffs had not satisfied "burden of identifying facts giving rise to a strong inference of scienter as to each speaker for each misstatement"). "That [some of] these allegations derive from [a] confidential source[] further detracts from their weight in the scienter analysis." *Shaw Grp.*, 537 F.3d at 535.

with the BPX-501 clinical program" considering the small size of the company, significance of BPX-501, and statements made by confidential witnesses. *Id.* at 23–25. To permit an inference of scienter from a defendant's corporate positions, a plaintiff must allege some combination of "special circumstances": (1) a small company in which "corporate executives would be familiar with the intricacies of day to day operations"; (2) a transaction "critical to the company's continued vitality"; (3) "misrepresented or omitted information . . . [that] would have been readily apparent to the speaker"; and (4) statements that are "internally inconsistent with one another." *Diodes*, 810 F.3d at 956 (citations omitted).

Here, the "special circumstances" exception does not apply. First, the Complaint contains no allegations about the number of employees at Bellicum, even though Plaintiff alleges in the Response that the company had about 100 employees during the Class Period. Doc. #58 at 23. Regardless, a company with more than 100 employees would not comport with case law finding a "special circumstance" for a small company. *See Nathenson*, 267 F.3d at 425 (32 to 35 employees); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 342 (5th Cir. 2008) (no employees); *cf. Neiman*, 854 F.3d at 750 (no special circumstance for 60 employees). And even if BPX-501 was "critical to the company's continued vitality," Plaintiff has not alleged any "misrepresented or omitted information . . . [that] would have been readily apparent to the speaker." In fact, the only misrepresented or omitted statements identified by Plaintiff were made by confidential witnesses and not by any of the Individual Defendants. *Id.* at 24–25. Similarly, Plaintiff does not point to any statements made by Defendants that were "internally inconsistent with one another." For those reasons, Plaintiff has not established that there are "special circumstances" to "tip the scales in favor of an inference of scienter." *Diodes*, 810 F.3d at 956.

In short, neither the totality of circumstances alleged in the Complaint nor the allegations

regarding the significance of BPX-501 supports a "cogent and compelling" inference of scienter. *Shaw Grp.*, 537 F.3d at 533.  Therefore, Plaintiff has not alleged an essential element of a Section 10(b) and Rule 10b–5 claim.  *See Neiman*, 854 F.3d at 746 ("plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury").  Accordingly, because Plaintiff has failed to state a claim under Section 10(b) and Rule 10b–5, the Complaint should be dismissed.

        b.    **Section 20(a)**

Section 20(a) "imposes joint and several liability upon persons who 'control' defendants that violate the Exchange Act."  *Phillips*, 401 F.3d at 647 n. 3 (quoting *Rosenzweig*, 332 F.3d at 862).  Such liability "is secondary only and cannot exist in the absence of a primary violation." *Southland*, 365 F.3d at 383.  Accordingly, because Plaintiff has not established a primary violation of Section 10(b) and Rule 10b–5, the Section 20(a) claim must fail.

        c.    **Leave to Amend**

In a footnote appended to the last page of the Response, Plaintiff contends that, "to the extent the Court finds any element of Plaintiff's claim deficient, Plaintiff seeks leave to replead." Doc. #58 at 26 n. 7.  In making this request, Plaintiff provides no basis for the Court to permit a second amended complaint.  *Cf. Integrated Elec.*, 497 F.3d at 556 (construing "relatively vague" request "to fix any infirmity" as "proper motion to amend" because plaintiff cited "corroborating testimony from two additional sources").  Therefore, because Plaintiff has made only a "nested" request for amendment and already filed an amended complaint, the Court denies this request. *See Patrick v. Wal-Mart, Inc.—Store No. 155*, 681 F.3d 614, 622–23 (5th Cir. 2012) (denying amendment where plaintiff asked in "opposition to dismissal for an opportunity to 'state said facts

with greater specificity'"); *Waggoner v. Denbury Onshore, LLC*, 612 F. App'x 734, 740–41 (5th Cir. 2015) (declining to grant leave to amend that was "tacked on to the end of [plaintiff's] response to [defendant's] motion to dismiss and gave no indication of the grounds for amendment").

**IV.    Conclusion**

For the foregoing reasons, the Court finds that Plaintiff has not alleged facts supporting an inference of scienter and, thereby, failed to state a claim under Section 10(b) and Rule 10b–5.  As a result, Plaintiff cannot establish derivative liability under Section 20(a).  Additionally, because Plaintiff already amended the Complaint and offered no basis for filing a second amendment, the Court declines to grant leave to amend.  Accordingly, the Motion is hereby GRANTED.

It is so ORDERED.

_____          _____
Date                                                              The Honorable Alfred H. Bennett
                                                                      United States District Judge